(83 App. Div. 8.)

LEWY v. BLUMENTHAL.

(Supreme Court, Appellate Division, Second Department. May 1, 1903.)

1. MONEY LOANED—CERTIFIED CHECK—USE TO SECURE CONCERT HALL LICENSE
   —CUSTOM OF POLICE DEPARTMENT—ADMISSIBILITY OF EVIDENCE.
       Plaintiff sued for money loaned by a certified check to defendant to secure a concert hall license. Defendant testified that he exchanged cash for the check, because he had been informed by a police inspector that the department required certified checks in order to obtain such licenses. *Held*, that the testimony of an auditor of the police department that it was the custom of the department to take cash in preference to any sort of a check was admissible.
       Bartlett and Jenks, JJ., dissenting.

Appeal from Municipal Court of City of New York.

Action by Emma Lewy against George A. Blumenthal. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Maurice Nagler, for appellant.

Theodore Prince, for respondent.

HOOKER, J. This action was brought in the Municipal Court of the City of New York to recover from defendant the sum of $150, claimed to have been loaned and advanced by her to the defendant that he might therewith procure a concert hall license from the police department of the city. From a judgment for defendant, plaintiff appeals to this court.

The plaintiff, her husband, and one Joseph Weinwarn were sworn as witnesses in her behalf, and all gave material evidence in relation to the issue whether the plaintiff made the loan to the defendant. The concert hall license was procured from the police department by the defendant with the plaintiff's certified check. She claimed that she loaned him the money to obtain the license, and that the loan was in the form of a certified check. His contention was, and his evidence tended to show, that the certified check was given to him by the plaintiff in exchange for $150 in cash. The defendant was the

only witness in his behalf, and the judgment of the justice for him must be based upon his evidence, alone and unsupported, as against the three witnesses for the plaintiff, who disputed him. During the course of his examination, the defendant, evidently in explanation of why he wished to present to the police department a certified check instead of cash, testified that he was informed by one Clayton, an inspector in that department of Long Island City, the day before the certified check bears date, that the police department would require him to present a certified check in order to obtain the license he was seeking. This evidence was deemed important by the defendant as explaining the transaction between the parties. In rebuttal the plaintiff called one Bacon, and elicited from him the fact that he was an auditor in the police department, and had been such for 18 months. He was then asked: "Do you know what is the custom in the police department in regard to issuing licenses for concert halls? (Objected to. Objection sustained.)" Plaintiff's counsel then stated: "I wish to prove by this witness it is the custom of the police department of the city of New York, when concert hall licenses are issued, to take cash payments in preference to checks, certified or uncertified, for the purpose of rebutting the testimony of the defendant showing that there was no reason for getting the check." The answer to the question and the offer were both excluded. We think the ruling upon this question of evidence was reversible error. The evidence was relevant, and should have been admitted. "It is relevant to put in evidence any circumstance which tends to make the proposition at issue either more or less improbable." 1 Wharton's Law of Evidence, § 21. The defendant had attempted to explain his transaction with the plaintiff, and whatever tended to refute it was as relevant as the explanation. Madan v. Sherard, 73 N. Y. 329, 29 Am. Rep. 153, was an action brought against the defendant, as president of the New York Transfer Company, a common carrier engaged in the business of transferring baggage, to recover the value of a trunk and its contents, alleged to have been lost while in its hands. The answer alleged that the trunk was received by the company under a special contract, which limited the defendant's liability to $100. This contract was printed upon the check for the trunk given to the plaintiff, and the time and place of delivery and character of the check and printed matter thereon were such that the court held that a judgment in plaintiff's favor, in effect adjudging that the printed matter did not constitute a contract between the parties, must be affirmed. The court said (page 335, 73 N. Y., and 29 Am. Rep. 153):

"The fact that the receipt was printed in large type, and could easily be read; that it was received in the daytime, or when there was sufficient light to enable the traveler to read it; that he was acquainted with the methods of the business—these and other facts may be shown, not as conclusive against the recovery, but as bearing upon the ultimate fact to be proven that the party, when he accepted the receipt, knew of its limitations, or that it contained special terms for the carriage of the property."

Devereaux v. Sun Fire Office, 51 Hun, 147, 4 N. Y. Supp. 655, was an action to reform and enforce a policy of fire insurance. The

plaintiff's claim was that the defendant's agent intended to issue a policy for one year, but that by a clerical error he inserted "sixty days" in the policy as the term for which it was to run, instead of one year, the time intended.   Upon the trial the witness Ferry, who had been in the insurance business long enough to be qualified, was asked:   "What was the usual rate of premium on the property in question in September, 1883?"   This question was objected to, the witness was allowed to answer, and the defendant excepted.   The court, at page 156, 51 Hun, and at page 660, 4 N. Y. Supp., held:

"The fact that the defendant received a premium, which, at the usual rate, would have entitled the plaintiff to a policy for one year, was quite potent evidence upon the question whether the agreement was as claimed by the plaintiff."

We think that, had the witness Bacon been permitted to answer, and had testified that it was the custom of the police department to take cash payments for concert hall licenses in preference to checks, either certified or uncertified, while not conlusive, would have been potent evidence upon the question whether the defendant ever had any transaction with the plaintiff, as he claimed.   It cannot well be said that the error was not prejudicial to plaintiff.   Any evidence which pointed to the discrediting of defendant or his theory was important, for the justice has believed the defendant's story unsupported, in the face of the positive assertions of three witnesses sworn on behalf of the plaintiff.   The judgment should be reversed, and a new trial ordered.

Judgment of Municipal Court reversed, and new trial ordered;  costs to abide the event.   All concur, except BARTLETT and JENKS, JJ., who dissent.

WILLARD BARTLETT, J. (dissenting).   I am unable to concur in the view that the ruling discussed in the opinion of Mr. Justice HOOKER was erroneous.   If the defendant had accounted for his use of the certified check, instead of money, by a statement that the police department in fact required certified checks, instead of cash, to be paid for concert licenses, the evidence as to the custom in the police department, which was excluded, would have been relevant, and its exclusion would have been error.   The testimony of the defendant on this subject, however, was, in effect, merely a declaration that he had been told by an inspector of police that a certified check would be required.   In other words, he sought to account for his action by the explanation that he had relied upon information obtained from some one who was in a position to know what actually were requirements of the department.   Indeed, he testifies that the inspector telephoned to New York "to the people of the police department," and then told the witness "that they had told him to bring a certified check for the concert license."   I am unable to see how proof of what was the actual custom of the police department in respect to the receipt of certified checks or cash for such licenses would in any wise affect the truthfulness of this testimony, or the validity of the excuse or explanation offered by the defendant.   The question

~was, what motive actuated him in procuring a certified check instead of using money? and it is plain that he might have been influenced by an apparently credible statement as to the requirements of the police department on that subject from one who was in a position to know, irrespective of its actual truth or falsity. It would have :been proper, of course, for the plaintiff to show, if he could, that the defendant knew the custom to be different, or that the inspector .had not made the statement to which the witness testified; but I can .perceive no ground on which proof of the actual custom of the department could be relevant, unless it appeared that such custom was :known to the defendant.

JENKS, J., concurs.